# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 19-1537V
UNPUBLISHED

| | |
|---|---|
| ROBERT PRUDE,<br><br>    Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>    Respondent. | Chief Special Master Corcoran<br><br>Filed: July 29, 2021<br><br>Special Processing Unit (SPU);<br>Findings of Fact; Onset;  Influenza<br>(Flu) Vaccine; Shoulder Injury<br>Related to Vaccine Administration<br>(SIRVA) |

*David John Carney, Green & Schafle LLC, Philadelphia, PA, for petitioner.*

*Dhairya Divyakant Jani, U.S. Department of Justice, Washington, DC, for respondent.*

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND RULING ON ENTITLEMENT[1]

On October 3, 2019, Robert Prude filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered a shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine administered on October 17, 2017. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this unpublished fact ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the fact ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons discussed below, I find that there is a preponderance of evidence that the onset of Petitioner's injury (specifically shoulder pain) occurred within 48 hours of his vaccination, and his pain was limited to his left shoulder. I otherwise find that Petitioner is entitled to compensation for a left SIRVA.

## I.    Relevant Procedural History

Shortly after the claim's initiation, Petitioner filed a statement of completion on October 14, 2019. ECF No. 7. However, on January 27, 2020, Petitioner was ordered to file additional evidence addressing the onset of his injury. ECF No. 12.

On February 22, 2021, Respondent filed a status report stating that he believed the record was substantially complete, but that he intended to defend this case. ECF No. 24. Respondent proposed filing a Rule 4(c) Report by May 10, 2021. Petitioner thereafter filed a status report on February 25, 2021, noting that this case has been pending for over one year and asking me to expedite its resolution.

On March 3, 2021, I ordered Petitioner to file a motion for a ruling on the record (ECF No. 26), which Petitioner filed on March 24, 2021. ECF No. 27, Petitioner's Motion for Ruling on the Record and Brief in Support of Damages ("Mot."). Petitioner argues that he has established, by a preponderance of evidence, that he suffered a Table Injury. Mot. at 17.[3]

Respondent filed a response on April 22, 2021. ECF No. 30, Respondent's Response to Petitioner's Motion for Ruling on the Record and Rule 4(c) Memorandum ("Res."). Respondent argues in part that Petitioner has failed to establish a Table claim because he had a history of left shoulder pain, the records do not established onset within 48 hours of Petitioner's vaccination, and his pain was not limited to his left shoulder. Res. at 10-12.[4]

Petitioner filed an amended petition (ECF No. 31),[5] supplemental affidavit (ECF No. 32), and a reply on May 5, 2021. ECF No. 33, Petitioner's Reply Brief in Support of Petitioner's Motion for Ruling on the Record ("Reply"). Petitioner addressed Respondent's positions and requested that I make a ruling on the record in favor of entitlement. Reply at 1. This issue is now ripe for resolution.

---

[3] Petitioner also included briefing on damages.

[4] Respondent also argues that Petitioner has not established causation-in-fact. Res. at 12-13.

[5] Petitioner noted in his Reply that the original Petition did not specifically allege a Table Injury. Reply at 2. Petitioner's amended petition cures this issue but alleging both a Table injury and causation-in-fact. *Id.*

## II.     Petitioner's Medical Records

Petitioner received the flu vaccine on October 17, 2017, in his left shoulder. Ex. 1 at 2.[6] At that time, Petitioner was fifty-five years old with type II diabetes myelitis, hypertension, and chronic obstructive pulmonary disease. Ex. 3 at 251, 711.

Nearly two months later, Petitioner was seen in urgent care on December 13, 2017, complaining of coughing, fever, and congestion for six weeks. Ex. 3 at 274.[7] Thereafter, between December and March of 2018, Petitioner was in contact with his medical providers at Kaiser Permanente for treatment of his diabetes and an upper respiratory infection. *See, e.g.,* Ex. 3 at 274 (seen for upper respiratory infection on December 13, 2017), *id.* at 308 (Petitioner was contacted on February 9, 2018, for follow-up regarding his diabetes), and *id.* at 325 (email correspondence on January 25, 2018, with Petitioner on behalf of Dr. Tan regarding outreach related to diabetes test results).

Petitioner subsequently saw Dr. Randall Tan on March 8, 2018, for a physical exam. Ex. 3 at 349. He received two vaccinations during that visit: a tetanus-diphtheria-acellular pertussis vaccine in his right shoulder, and a hepatitis B vaccine in his left shoulder. Ex. 1 at 2. There are no documented complaints of left shoulder pain or a physical examination of his shoulder, but he was assessed with left shoulder joint pain. Ex. 3 at 349-362; 351.

On May 9, 2018, Petitioner returned to Dr. Tan and reported left shoulder pain "for a couple of months." Ex. 3 at 421. This is the first medical record directly corroborating Petitioner's claim – but it was created nearly six months after the vaccination at issue, and does not specify the vaccination date or onset of his pain. Petitioner's shoulder capsule was tender to palpitation. *Id.* at 422. He was diagnosed with "rotator cuff syndrome" and received a steroid injection. *Id.*

Two months later, on July 9, 2018, Petitioner again saw Dr. Tan. Ex. 3 at 434. He reported an eight-month history of left shoulder pain (which would place onset in November 2017), and an X-ray showed mild degenerative joint disease. *Id.* at 439. Petitioner reported the cortisone injection received in May had helped when he again saw Dr. Tan on July 31, 2018, but it had since worn off. *Id.* at 454.

---

[6] Petitioner's medical record reflects that the flu shot was declined (Ex. 3 at 252), however this appears to be in error. Ex. 3 at 833 (email from Petitioner to Dr. Tan requesting that Dr. Tan "correct" the medical record noting that Petitioner declined the flu vaccine).

[7] It was also noted at that time that Petitioner's diabetes was uncontrolled. Ex. 3 at 274.

During a follow-up visit on August 8, 2018, Petitioner complained of ongoing left shoulder pain for eight months. Ex. 3 at 466. He thereafter began physical therapy that same month, on August 13, 2018. *Id.* at 471. He reported mild symptoms of pain, weakens, and stiffness that was present for nine months (placing onset again in November), and advised the mechanism of injury was a flu vaccine. *Id.* at 471. Upon examination, Petitioner exhibited reduced range of motion and weakness. *Id.* at 472. He was diagnosed with "power deficits" and discharged after one visit with a home exercise program. *Id.* at 472.

Between August 24, 2018 and September 12, 2018, Petitioner was seen several times for cardiac-related events. Ex. 3 at 482, 540, 698, 714, and 723. There is no discussion of shoulder pain during these visits.

On September 25, 2018, Petitioner again presented to physical therapy for left shoulder pain. *Id.* at 750. Petitioner now reported "left shoulder pain since October 17, 2017 after receiving a flu vaccination" – the first record in which an association with the prior vaccination was proposed. The physical therapist noted Petitioner showed weakness, but a normal range of motion with signs of impingement. *Id.* at 750.

 Petitioner attended his third physical therapy appointment on November 26, 2018, reporting slight improvement in his shoulder pain. At that time, his range of motion was recorded as within normal limits, but he still experienced pain during flexion and abduction. Ex. 3 at 892. Petitioner was discharged from physical therapy on December 13, 2018. *Id.* at 931-32. At that time, he reported only occasional pain that was significantly reduced. *Id.* at 932.

There is a subsequent gap in the records filed in this case of almost one year. Petitioner was next seen at the San Jacinto Family & Urgent Care on October 30, 2019, and again complained of shoulder pain that "has been there for more than 3 years and recalls it started after immunization." Ex. 4 at 4.

III.    **Affidavits**

Five affidavits were filed in support of this claim, including an affidavit from Petitioner (Ex. 2); an affidavit from his sister, Deborah Prude (Ex. 5), a coworker, Regina Winston (Ex. 6); his girlfriend, Beverly Kralik (Ex. 7), and a supplemental affidavit from Petitioner. Ex. 8.

In Petitioner's affidavit, he asserts that he received a flu vaccine on October 17, 2017, on his way through the lobby to his annual diabetic retinopathy screening. Ex. 2 at

2-3. Petitioner also stated that his shoulder was sore and painful the day he received his flu vaccination, and the pain increased the next day. Petitioner acknowledges delaying treatment for the pain, but explains this was due to the need to reschedule an appointment with his physician, Dr. Tan, who was unavailable until March 2018. Ex. 2 at 5.

Petitioner's sister, Deborah Prude, also provided an affidavit. Ex. 5. Ms. Prude stated that she recalled when Petitioner received his vaccine because he was planning on mowing her lawn the following Saturday (October 21, 2017). Ex. 5 at 2. However, due to shoulder pain, he was unable to do so. Ms. Prude also recalls numerous instances in October 2017 that Petitioner was unable to participate in activities such as cleaning his home in preparation for sale and landscaping due to his shoulder pain. Ex. 5 at 2-3.

Petitioner's coworker, Regina Winston, submitted an affidavit. Ms. Winston stated that she and Petitioner worked together beginning in 2010, and would often take walks together during their work breaks. Ex. 6 at 1. Starting in Mid-October of 2017 the walks began to slow and were less frequent due to Petitioner's shoulder pain. Ex. 6 at 2. Ms. Winston also recalled a project that involved taking reference books on and off shelves in October of 2017. Ms. Winston described how she saw Petitioner struggle to reach shelves, take books down, and return them to shelves, due to shoulder pain. Ex. 6 at 3.

Petitioner's girlfriend, Ms. Beverly Kralik, submitted an affidavit as well. Ex. 7. Ms. Kralik described how Petitioner was unable to participate in certain activities, including cleaning his home in preparation for sale on October 21, 2017, due to shoulder pain. Ms. Kralik also described how she observed that Petitioner's shoulder pain interfered with his sleep. Ex. 7 at 2.

Finally, Petitioner submitted a supplemental affidavit explaining that the reference to "severe and unrelenting pain from September 2016 to present" in his original affidavit was in error. Ex. 8 at 1. According to him, the sentence should read "I endured severe and unrelenting pain from *October 2017* to the present." Ex. 8 at 1 (emphasis added).

## IV.   Issue

At issue is whether the onset of Petitioner's symptoms (specifically pain) occurred within 48 hours, and whether his pain was limited to his left shoulder as set forth in the Vaccine Injury Table and Qualifications and Aids to Interpretation ("QAI") for a Table SIRVA. 42 C.F.R. § 100.3(c)(10)(ii) (required onset for pain listed in the QAI); § 100.3(c)(10)(iii) (requiring pain and reduced range of motion be limited to the shoulder in which the vaccine was administered).

### V.      Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence.  The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.* In *Kirby*, the Federal Circuit emphasized that the medical records in question were "silent" about the existence or nonexistence of symptoms that would render the petitioner's injury sufficiently severe to receive compensation under the Vaccine Act. *Id.* (citing *Shapiro v. Sec'y of Health & Hum. Servs.*, 101 Fed. Cl. 532, 538 (2011) (itself citing *Murphy v. Sec'y of Health & Hum. Servs.*, 23 Cl. Ct. 726, 733 (1991) (holding that "the absence of a reference to a condition or circumstance is much less significant than a reference which negates the existence of the condition or circumstance").

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## VI.   Finding of Fact

Respondent argues in his Rule 4(c) Report that Petitioner has failed to show he suffered a Table claim, because onset of his pain was not within 48 hours of his vaccination, that his pain was not limited to his left shoulder, and that he had a prior history of left shoulder pain. Res. at 10-12*.*

### a.  Onset of Petitioner's Injury was within Forty-eight Hours of his Flu Vaccination

The following finding of fact is based on a complete review of the record, including all medical records, affidavits, and additional evidence filed. Specifically, I highlight the following:

- Petitioner received a flu vaccination in his left shoulder on October 17, 2017. Ex. 1 at 2.

- On March 8, 2018, Petitioner was assessed with left shoulder joint pain, although the record in question gives no details about the temporal period in which the pain began, and/or how long Petitioner suffered with it. Ex. 3 at 349-362.

- On May 9, 2018, Petitioner reported continued left shoulder pain, and was diagnosed with rotator cuff syndrome. Ex. 3 at 422.

- On August 13, 2018, Petitioner began physical therapy and reported shoulder pain, stiffness, reduced range of motion, and weakness. Ex. 3 at 471. Petitioner also reported now (for the first time) that he believed the cause of injury was a flu vaccine. *Id.*

- A record from September 25, 2018 states reported Petitioner had "left shoulder pain since October 17, 2017 after receiving a flu vaccination." Ex. 3 at 750.

- On October 30, 2019, Petitioner complained of shoulder pain that started after an immunization. Ex. 4 at 4.

Additionally, the affidavits submitted by Petitioner provide further corroborating evidence including specific events close-in-time to Petitioner's vaccination. The affidavit of Ms. Prude, for example, describes numerous instances in October 2017 that Petitioner was unable to participate in activities due to shoulder pain. Ex. 5 at 2-3. She also provided specific instances, such as when Petitioner was unable to assist her with lawn care due to shoulder pain on October 21, 2017, just three days after his vaccine. Ms. Winston's affidavit is also helpful in this case, as it describes Petitioner's struggles to move books during a work project in October of 2017. Ex. 6 at 3.

Based on the above medical entries and corroborating affidavits, the preponderance of the evidence supports – *if barely* - a finding that onset of Petitioner's injury was within 48 hours of his October 17, 2017 flu vaccine.

The record alone offers fairly weak support for Petitioner's onset assertions. Petitioner never complained of shoulder pain for nearly six months, despite a number of intervening medical treatment visits – and even when he first was *assessed* with such pain (at his visit with Dr. Tan in March 2018) he did not report pain since vaccination. He

also provided varying onsets, some of which could have occurred outside of the 48-hour period for the Table claim. For example, on May 9, 2018 Petitioner reported to Dr. Tan that he had been experiencing shoulder pain "for a couple of months", which would have put onset of his injury in late January or early February. Ex. 3 at 421. Later, he reported what would be a November onset ( on July 9, 2018 (Ex. 3 at 434), August 8, 2018 (Ex. 3 at 466), and August 13, 2018 (Ex. 3 at 471)), and did not specify vaccination onset until the start of his physical therapy. *Id.* at 750.

However, the record must be viewed in the entirety - and in conjunction with the affidavit evidence, which the Federal Circuit instructs deserves evidentiary weight. *Kirby*, 997 F.3d at 1382. Here, unrebutted affidavit evidence establishes Petitioner did likely experience pain in close proximity to vaccination. And it is also understood in the Program that individuals who have experienced a SIRVA injury often misconstrue its character, and may delay treatment – either in the false hope that the pain will prove transitory, or in order to see a particular kind of treater. *See, e.g.*, *Tenneson v. Sec'y of Health & Hum. Servs.*, No. 16-1664V, 2018 WL 3083140, at *5 (Fed. Cl. Spec. Mstr. Mar. 30, 2018), review denied, 142 Fed. Cl. 329 (2019), (finding a 48-hour onset of shoulder pain despite a nearly six-month delay in seeking treatment); *Williams v. Sec'y of Health & Hum. Servs.*, 17-830V, 2019 WL 1040410, at *9 (Fed. Cl. Spec. Mstr. Jan. 31, 2019) (noting a delay in seeking treatment for five-and-a-half months because petitioner underestimated the severity of her shoulder injury); *Knauss v. Sec'y of Health & Hum. Servs.*, 16-1372V, 2018 WL 3432906 (Fed. Cl. Spec. Mstr. May 23, 2018) (noting a three-month delay in seeking treatment). It is unreasonable to expect claimants to tell *one* kind of specialist about a possible shoulder injury when the specialist does not have expertise in that medical field.

Again, the facts of this case present a very close call – and while Program law does counsel to decide such matters in favor of the petitioner, the facts of a case like this do *not* support more than a very modest damages award. Petitioner should especially be mindful that his barely-preponderant showing on onset means he cannot expect (and should not request) a high-dollar-figure pain and suffering award – since a claimant who was able to tolerate SIRVA pain for so long without treatment is not a person who experienced a severe injury. Regardless, the evidence presented herein supports a finding that Petitioner's pain "more likely than not" began within 48 hours of his vaccine.

### b. Pain was limited to Petitioner's Left Shoulder

I also find that there is a preponderance of evidence that Petitioner's pain was limited to his left shoulder. The following finding of fact is based on a complete review of the record, including all medical records, affidavits, and additional evidence filed. Specifically, I highlight the following:

- Petitioner was assessed with left shoulder joint pain on March 8, 2018. Ex. 3 at 349.

- On May 9, 2018, Petitioner reported left shoulder pain, exhibited a tender shoulder capsule, and was diagnosed with rotator cuff syndrome. Ex. 3 at 421-22.

- On July 9, 2018, Petitioner was seen again for left shoulder pain and had an x-ray of that shoulder. Ex. 3 at 439.

- On September 25, 2018, Petitioner presented to physical therapy for left shoulder pain. Ex. 3 at 750. At that time, Petitioner showed signs of impingement and weakness. *Id.*

Based on the above medical entries, the preponderance of the evidence supports a finding that Petitioner's injury was more likely than not limited to his left shoulder. Petitioner's records consistently report shoulder pain and loss of range of motion, which are specific and consistent with other SIRVA cases.

I acknowledge that there are references to pain radiating down Petitioner's left arm and weakness in his hand. Ex. 2 at 6 (reporting pain through Petitioner's neckline). However, the majority of other records support a finding that Petitioner's pain was limited to his left shoulder.

Accordingly, preponderant evidence establishes that Petitioner's pain was limited to his left shoulder.

## VII.   Conclusion

**In view of the evidence of record, I find that there is preponderant evidence that the onset of Petitioner's injury, specifically shoulder pain, was within 48 hours of his vaccine and his pain was limited to his left shoulder. Further, based on the evidence of record, I find that Petitioner is entitled to compensation.**

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master